IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GREG SCHER, | ) CIVIL NO. 09-00482 JMS/LEK |
| | ) |
| Plaintiff, | ) ORDER DISMISSING AMENDED |
| | ) COMPLAINT PURSUANT TO |
| vs. | ) FEDERAL RULE OF CIVIL |
| | ) PROCEDURE 12(b)(6) |
| PREMIER HOLDINGS, INC., d/b/a | ) |
| SIX FLAGS THEME PARKS, | ) |
| DAVID ROEMER, NORMAN | ) |
| CORLEY, BRIAN CHAMBERLAIN, | ) |
| ROSS GULLET, and JOHN AND | ) |
| JANE DOES #1 THROUGH 10, ET | ) |
| AL., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**ORDER DISMISSING AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

## I. **INTRODUCTION**

On November 23, 2009, pro se Plaintiff Greg Scher ("Plaintiff") filed an Amended Complaint alleging claims against Defendants Premier Holdings, Inc., David Roemer ("Roemer"), Norman Corley ("Corley"), Brian Chamberlain ("Chamberlain"), and Ross Gullet ("Gullet") (collectively, "Defendants"), for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") stemming from an incident in which Plaintiff's vehicle was allegedly broken into while parked at Six Flags theme park ("SFTP") in St. Louis, Missouri.

As explained below, the court dismisses the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.   **BACKGROUND**

### A.   **Factual Background**

As alleged in the Complaint, on August 30, 2008, Plaintiff paid entrance to SFTP, including the regular parking fee.  At the advice of the parking cashier, Plaintiff paid an additional fee of $25.00 for "a very secure area in which the guards would continuously monitor the cars parked there."  Am. Compl. at II ¶ 1.  Upon return, Plaintiff found that his vehicle was broken into and his GPS navigation unit was missing.  *Id.* ¶¶ 2-3.  Plaintiff subsequently filed complaints and reports with the SFTP security and the local Eureka Missouri Police Department.  *Id.* ¶¶ 4-5.

Following various efforts by Plaintiff to contact SFTP security personnel, Plaintiff was put in contact with Gullet, the Safety Director at SFTP.  *Id.* at I ¶ 6, II ¶¶ 2-3.  After communicating with Plaintiff for several months, Gullet ultimately confirmed via email that he received approval to pay Plaintiff $400.00 to cover the expense of the stolen GPS navigation unit, but that compensation would not be provided until Plaintiff returned a signed and notarized "Release of All Claims" form.  *Id.* Ex. E.  Gullet continued to communicate with Plaintiff via

email, informing him that payment was being processed and at one point, telling him that a check would be mailed the following week.  *Id.* Ex. C; Ex. D.

After an extended absence of communication with Gullet, Plaintiff contacted Defendants Chamberlain, the Safety Manager at SFTP, and Corley, the Director of SFTP, who advised Plaintiff that Gullet was no longer employed by SFTP and that they had no prior knowledge of Plaintiff's loss.  *Id*. at II ¶¶ 10-11. Chamberlain and Corley started communicating with Plaintiff regarding the incident at SFTP, but eventually ceased communication.  *Id.*

On September 30, 2009, Plaintiff notified Defendants of his intent to file suit if Defendants failed to respond to Plaintiff in a timely manner.  *Id.* ¶ 12. On October 11, 2009, Plaintiff filed his original Complaint in this court for "Negligence, Intentional Tort, Fraud and Damages in Bailment."

On November 11, 2009, Reed Sugg, SFTP's outside attorney ("Sugg"), emailed Plaintiff proposing to resolve all issues with Plaintiff regarding the dispute.  Sugg asserted that even though SFTP has "no liability for the loss [Plaintiff] incurred in its parking lot," the park is willing to "provide [Plaintiff] with a $400 check as previously noted by [Gullet] if [Plaintiff] will sign and return [a] Release of All Claims" and then dismiss the lawsuit.  *Id*. Ex. H.

The Amended Complaint alleges that the acts described above violate

RICO because Defendants "have had a 'meeting of the minds' and together they conspired to defraud and delay [] Plaintiff at every opportunity via telephone (wire fraud) and [] email (electronic fraud)."  *Id*. at III ¶ 1.

## B.    Procedural Background

On October 11, 2009, Plaintiff filed his first Complaint for "Negligence, Intentional Tort, Fraud and Damages in Bailment."  On November 23, 2009, Plaintiff filed his Amended Complaint alleging RICO claims against Defendants.

On January 12, 2010, Defendants filed their Motion to Dismiss.[1] Plaintiff filed an Opposition on January 18, 2010, and Defendants filed a Reply on January 21, 2010.[2]

On February 18, 2010, the court raised on its own the issue of whether the Amended Complaint should be dismissed for failure to state a claim upon which relief may be granted and allowed the parties to brief this issue.  On March 4, 2010, Defendants filed a Response and Plaintiff filed a Memorandum in support

---

[1]  On January 7, 2010, Defendants David Roemer, Norman Corley, and Brian Chamberlain filed a motion to dismiss for lack of personal jurisdiction, and on March 10, 2010, Defendant Ross Gullet filed his motion to dismiss for lack of personal jurisdiction.  Because the court dismisses the Amended Complaint for failure to state a claim as to these Defendants, the court deems these Motions moot.

[2]  Pursuant to Local Rule 7.2(d), the court finds this matter suitable for disposition without a hearing.

of Civil RICO Action.

### III.  <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions."  *Id.*  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8.  *Id.* at 1950.

# IV. <u>DISCUSSION</u>

## A.    RICO Claim

Defendants argue that the court lacks subject matter jurisdiction because Plaintiff's RICO Act claim is wholly frivolous.  In general, "[a] suit that is utterly frivolous does not engage the jurisdiction of the federal courts."  *Carr v. Tillery*, 591 F.3d 909, 917 (7th Cir. 2010); *see also Johnson v. Orr*, 551 F.3d 564, 570-71 (7th Cir. 2008); *Keniston v. Roberts*, 717 F.2d 1295, 1298 (9th Cir. 1983).  As a practical matter, however, "dismissal of even a very weak case should be on the merits rather than because it was too weak even to engage federal jurisdiction. . . . Otherwise courts would spend too much time distinguishing degrees of weakness."  *Carr*, 591 F.3d at 917 (citing *Travelers Cas. & Surety Co. of Am., Inc. v. Nw. Mut. Life Ins. Co.*, 480 F.3d 499, 501 (7th Cir. 2007)).

The court determines that the Amended Complaint, while apparently frivolous, is not so utterly frivolous that the court lacks subject matter jurisdiction.  Instead, the court considers whether the Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See Baker v. Dir., U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990) (holding that a district court may dismiss cases *sua sponte* pursuant to Rule 12(b)(6) without notice where plaintiff could not prevail on complaint as alleged); *Omar v. Sea-Land Serv., Inc.*,

813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim *sua sponte*

under [Rule] 12(b)(6).  Such a dismissal may be made without notice where the

claimant cannot possibly win relief.");  *Wong v. Bell*, 642 F.2d 359, 362 (9th Cir.

1981) ("A trial court may act on its own initiative to note the inadequacy of a

complaint and dismiss it for failure to state a claim, . . . but the court must give

notice of its sua sponte intention to invoke Rule 12(b)(6) and afford plaintiffs 'an

opportunity to at least submit a written memorandum in opposition to such

motion.'" (citation omitted)).  Out of an abundance of caution, the court adopted

the *Bell* approach and gave Plaintiff notice and an opportunity to respond in a

February 18, 2010 Order.  Based on the following, the court finds that Plaintiff's

RICO Act claim fails to state a claim upon which relief may be granted.

The Amended Complaint asserts a single claim against Defendants for

violation of RICO, 18 U.S.C. § 1962(c), which provides:

> It shall be unlawful for any person employed by or
> associated with any enterprise engaged in, or the
> activities of which affect, interstate or foreign commerce,
> to conduct or participate, directly or indirectly, in the
> conduct of such enterprise's affairs through a pattern of
> racketeering activity or collection of unlawful debt.

"To state a claim under § 1962(c), a plaintiff must allege '(1) conduct

(2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Odom v.*

*Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc) (quoting *Sedima,*

*S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  A "pattern of racketeering activity" involves engaging in "at least two" predicate acts of racketeering activity. 18 U.S.C. § 1961(5).  Section 1961(1) outlines an extensive list of predicate racketeering activities, and "rang[es] from criminal copyright activities, the facilitation of gambling, and mail fraud to arson, kidnapping and murder."  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 479 (2006) (citing 18 U.S.C. § 1961(1)).

Plaintiff asserts that Defendants should be held liable for an incident in which Plaintiff's vehicle was broken into and his GPS navigation unit was stolen.  Specifically, the Amended Complaint alleges that Defendants knowingly deceived Plaintiff to pay additional money for "preferred and secure parking," but no security was provided.  Am. Compl. at IV  ¶ 1.  The Amended Complaint further alleges that Defendants promised Plaintiff repayment for his GPS navigation unit, but Defendants never followed through on reimbursing Plaintiff. *Id*. at II-IV.  These allegations support a run-of-the-mill tort claim, not a Federal RICO violation.  *See Carr*, 591 F.3d at 912-13, 918 (finding that "the complaint simply renames breach of contract fraud or crime in an effort to satisfy the requirement of establishing predicate acts required for a RICO claim," and hence dismissing the entire case under Rule 12(b)(6) (quotation marks omitted)); *Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992) (en banc) ("RICO

was intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff."); *Midwest Grinding Co. v. Spitz,* 976 F2d 1016, 1025 (7th Cir. 1992) ("RICO has not federalized every state common-law cause of action available to remedy business deals gone sour.").

    Plaintiff nonetheless attempts to frame his allegations as a RICO claim by alleging that Defendants committed several acts of wire fraud when they communicated with Plaintiff to settle Plaintiff's demand for repayment of his GPS navigation unit.  Specifically, the Amended Complaint alleges that:

> [E]ach and every email along with each and every phone call between [] Defendants and [] Plaintiff is deemed a separate and distinct RICO violation in that each and every act resulted in one or more of the Defendants furthering the practice of lying to [] Plaintiff [regarding the compensation] for his damages and loss.

*Id*. at IV ¶ 2.  Plaintiff further alleges that beginning in August 2008, Defendants "willfully continued their unlawful and damaging RICO 'pattern of conduct' throughout the pendency of this claim."  *Id*. at III ¶ 3.  These allegations are insufficient to state a RICO claim for several reasons.

    First, these allegations are insufficient to allege a "pattern" of racketeering activity.  A "pattern" requires a showing that (1) the predicate acts are related, and (2) that such activity amounts to or poses a threat of continued criminal activity.  *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989); *see*

*also Comwest, Inc. v. Am. Operator Serv., Inc.*, 765 F. Supp. 1467, 1477 (C.D. Cal. 1991) (finding that continuity refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with the threat of repetition" (citation omitted)).  As shown by the exhibits attached to the Amended Complaint, Defendants' phone calls and emails to Plaintiff were made in an effort to settle the dispute, not to continue any "criminal" activity.  Am. Compl. Ex. C-E.

Second, "RICO . . . [does] not permit the maintenance of a lawsuit for the sending of a prelitigation demand to settle legal claims that do not amount to a sham." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 942 (9th Cir. 2006).  While the Amended Complaint alleges that Defendants' communications with Plaintiff involved intentional misrepresentations and fraud, the exhibits to the Amended Complaint show that Defendants were seeking to settle the alleged dispute.  Am. Compl. Ex. C-E.  Thus, Plaintiff's allegations regarding Defendants' attempts to settle Plaintiff's claim cannot form the basis of predicate acts under RICO.

Third, Plaintiff's allegations regarding Defendants' communications with Plaintiff do not include all the elements of wire fraud.  "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *W. Assoc. Ltd. P'ship, ex rel. Ave. Assoc.*

10

*Ltd. P'ship v. Mkt. Square Assoc.*, 235 F.3d 629, 637 (D.C. Cir. 2001) (quoting

*Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000)).   Wire

fraud requires three elements: "(1) a scheme to defraud; (2) use of the wires in

furtherance of the scheme; and (3) a specific intent to deceive or defraud."   *United*

*States v. Shipsey*, 363 F.3d 962, 971 (9th Cir. 2004).   Because the exhibits to the

Amended Complaint show Defendants' willingness to resolve the dispute so long

as Plaintiff first provides a "Release of All Claims" form, Am. Compl. Ex. C-E,

there was no "affirmative, material misrepresentation" necessary to support a

scheme to defraud.   *United States v. Benny*, 786 F.2d 1410, 1418 (9th Cir. 1986).

In sum, the court dismisses Plaintiff's RICO Act claim for failure to

state a claim upon which relief can be granted.

**B.      State Law Claims**

Plaintiff's Amended Complaint appears to allege a single RICO claim.

Liberally construing Plaintiff's Amended Complaint, however, it is arguable that

Plaintiff also asserts state law claims.   *See Eldridge v. Block*, 832 F.2d 1132, 1137

(9th Cir. 1987) (stating that courts must "liberally construe the inartful pleading of

pro se litigants" (citation and quotation marks omitted)).   The court therefore

determines whether Plaintiff's potential state law claims provide jurisdiction in this

court.

Diversity jurisdiction requires that the matter in controversy exceed the sum or value of $75,000, exclusive of interest and costs, and the dispute must be between citizens of different states.  28 U.S.C. § 1332(a).  Because Plaintiff resides in the Hawaii and all of the Defendants reside in Missouri, at issue is whether the amount in controversy exceeds $75,000.  Plaintiff seeks "actual" damages in the amount of $750 for the stolen GPS navigation unit and $35,612 for his time spent attempting to resolve the issue, and punitive damages in the amount of $1,000,000.  Am. Compl. at V.

To justify dismissal, the court must examine whether Plaintiff's claim for damages is made in good faith and "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount."  *Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997) (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).  In determining the jurisdictional amount in controversy, both compensatory and punitive damages must be considered "to the extent they are recoverable and to the extent claimed."  *Russell v. Access Securepak, Inc.*, 2007 WL 4170756, at *1 (E.D. Cal. Nov. 20, 2007).

Beyond the $750 to compensate Plaintiff for the GPS navigation unit, Plaintiff asserts that he is owed $35,612 as compensation for his time spent

attempting to resolve the dispute between the parties.  Am. Compl. at V.  This amount is not compensable as damages for several reasons.

First, Plaintiff has failed to adequately allege that his discussions with Defendants were part of any ongoing fraud by Defendants.  Rather, as the exhibits to the Amended Complaint show, Defendants were seeking to resolve the alleged dispute over the stolen GPS navigation unit.  Am. Compl. Exs. C-E.  Accordingly, the parties' attempts to settle the dispute are not properly part of any claims brought by Plaintiff.

Second, Plaintiff's claim for $35,612 is not recoverable under Missouri law.[3]  At best, time spent trying to settle a claim would constitute consequential damages.  Consequential damages, however, are those damages "presumed to have been within [defendant's] contemplation at the time of the commission of the fraud, and plaintiff may recover damages for any injury which is the direct and natural consequence of his acting on the faith of defendant's representations."  *Ford v. St. Louis Metro. Towing, L.C.*, 2010 WL 618491, at *12

---

[3]  While the parties do not address what law Plaintiff's state law claims would be under, the court finds that Missouri law applies.  Hawaii choice of law rules look "to the state with the most significant relationship to the parties and subject matter."  *United W. Grocers, Inc. v. Twin City Fire Ins. Co.*, 457 F.3d 1106, 1111 (9th Cir. 2006).  Because the incident occurred in Missouri, Plaintiff was a resident of Missouri at the time of the instant cause of action, and Defendants currently reside in Missouri, the court finds that Missouri has the most significant relationship with the parties and the subject matter of the Amended Complaint.

(E.D. Mo. Feb. 18, 2010) (quoting *Scott v. Blue Spring Ford Sales, Inc.*, 215

S.W.3d 145, 182 (Mo. Ct. App. 2006)).  Defendants could not have contemplated

that Plaintiff's loss of a $750 GPS navigation unit could result in causing Plaintiff

additional injury of $35,612.

   In sum, Plaintiff cannot recover $35,612 for his time spent attempting

to reach a settlement with Defendants, and therefore the court finds that actual

damages are in the amount of $750.  Accordingly, the jurisdictional amount can be

met only through punitive damages.

   Because Plaintiff's claim for punitive damages of $1,000,000 makes

up "the bulk of the amount in controversy, and may even have been colorably

asserted solely to confer jurisdiction," the court must scrutinize this claim closely.

*Russell*, 2007 WL 4170756, at *1.  To meet the jurisdictional requirement, Plaintiff

would need to recover punitive damages in the amount of $74,250 --

approximately 100 times the compensatory damage amount.  "Such an award

would be grossly disproportionate to the award of compensatory damages and

would appear to be excessive . . . and outside of the federal Constitutional limits

established by the Supreme Court."  *Brown v. Robinson*, 2009 WL 1313364, at *4

(S.D. Ohio May 8, 2009).  "Single-digit multipliers are more likely to comport

with due process, while still achieving the State's goals of deterrence and

retribution . . . ." *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003); *see also Smith v. Am. Gen. Life & Acc. Ins.*, 337 F.3d 888, 893 (7th Cir. 2003).  Plaintiff cannot recover $74,250 with actual damages of only $750. Accordingly, the court finds that Plaintiff's potential state law claims do not meet the amount in controversy necessary for diversity jurisdiction.

## C.     Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that the court "should freely give leave [to amend a pleading] when justice so requires."  "A district court, however, does not abuse its discretion in denying leave to amend where amendment would be futile."  *Flowers v. First Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002); *see also Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 356 (9th Cir. 1996) (affirming the district court's denial of leave to amend "[b]ecause the proposed claim would be redundant and futile").

Plaintiff's Amended Complaint contains detailed factual allegations as well as sufficient exhibits to describe the extent of the alleged dispute between Plaintiff and Defendants.  As described above, however, these allegations and exhibits do not support a RICO claim or diversity jurisdiction.  Given the specificity of the allegations and the exhibits Plaintiff provided, the court finds that granting Plaintiff leave to amend his complaint further would be futile.

# V.  <u>CONCLUSION</u>

Based on the above, the court dismisses the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) as to Defendants David Roemer, Norman Corley, Brian Chamberlain, and Ross Gullet, and finds that it lacks subject matter jurisdiction over any state law claims.

The court recognizes, however, that an automatic stay is currently in place as to claims against Defendant Premier Holdings, Inc., which entered bankruptcy prior to Plaintiff's filing of his original Complaint.  Doc. No. 27. "[P]ost-filing dismissal in favor of the bankrupt of an action that falls within the purview of the automatic stay violates the stay where the decision to dismiss first requires the court to consider other issues presented by or relating to the underlying case."  *Dean v. Trans World Airlines, Inc.*, 72 F.3d 754, 756 (9th Cir. 1995). Accordingly, while the claims against Premier Holdings, Inc. would be dismissed for the same reasons discussed above, dismissing these claims would

///

///

///

///

///

16

violate *Dean*.  Therefore, Plaintiff's claims against Defendant Premier Holdings,

Inc. remains.

       IT IS SO ORDERED.

       DATED:  Honolulu, Hawaii, March 23, 2010.



                     /s/ J. Michael Seabright
                     J. Michael Seabright
                     United States District Judge

*Scher v. Premier Holdings, Inc. et al.*, Civ. No. 09-00482 JMS/LEK, Order Dismissing Amended
Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6)